UNITED STATES DISTRICT COURT
MIDDLE DISTRICT OF FLORIDA
TAMPA DIVISION

----------------------------------------------  X
OLIVET UNIVERSITY,                             :
                                               :
               Plaintiff,               :
                                               :      **COMPLAINT**
    -against-                           :      **WITH JURY DEMAND**
                                               :
ALEX   ROUHANDEH,   DEV                         :      **CASE NO. 8:25-CV-01678**
PRAGAD,   NANCY   COOPER,                       :
DAYAN  CANDAPPA, and  NAVEED                    :
JAMALI                                          :
                                               X
          Defendants.
----------------------------------------------

Olivet University ("Olivet"), by its undersigned counsel, brings this Complaint against Alex Rouhandeh, Dev Pragad, Nancy Cooper, Dayan Candappa, and Naveed Jamali for committing defamation against Olivet.

## NATURE OF THE ACTION

1. Olivet University is a private, evangelical Christian university dedicated to training ministry-bound men and women to preach the gospel to the network generation. Olivet's vision is born of God's enduring hope for a world that is "full of the knowledge of the Lord as the waters cover the sea."[1] The fulfillment of this Biblical vision inspires, orients, and defines the work of this institution. Olivet's main campus is located in Southern California. It also has extension campuses across the United States, including in Florida,

---

[1] *Isaiah* 11:9 (English Standard Version)

Missouri, Tennessee, and Washington, D.C.  Olivet's Florida campus is located in the suburbs of Orlando, within the Middle District of Florida.  Olivet's national accreditor, the Association for Biblical Higher Education, is also located in Florida.

2. Newsweek Publisher Dev Pragad is the initiator, orchestrator, and publisher—and Alex Rouhandeh, Nancy Cooper, Dayan Candappa, and Naveed Jamali are the writers, editors, and co-publishers—of 20 Newsweek articles systematically attacking Olivet.  This barrage began shortly after Pragad vowed in text messages to attack Olivet with a "nuclear bomb."

3. Pragad, Rouhandeh, Cooper, Candappa, and Jamali conspired to attack Olivet by joining together as a covert inner circle inside of Newsweek.  Their positions were as follows: Newsweek Publisher, Dev Pragad; Chief Content and Strategy Officer Dayan Candappa; Global Editor in Chief Emeritus and Advisor Nancy Cooper; Contributing Editor-at-Large Naveed Jamali; and Congressional Correspondent Alex Rouhandeh.

4. Pragad, Rouhandeh, Cooper, Candappa, and Jamali have altogether authored, edited, and published 20 articles since the Newsweek Publisher's threat of attacking Olivet with a "nuclear bomb."

5. The systematic attack campaign pushed by Pragad, Rouhandeh, Cooper, Candappa, and Jamali began in 2022 and continued unabated for more than

two years—the most recent article attacking Olivet was published on December 18, 2024.

6. Rouhandeh was a general assignment reporter for Newsweek at the time he began covering Olivet. He penned several attack pieces against Olivet and was then promoted to the position of Congressional Correspondent. This promotion came after Pragad specifically sent text messages to Olivet members threatening to "nuke everyone" by "[triggering] a congressional investigation [into] Olivet."[2] Since then, at least two congresspeople have given quotes to Newsweek, which Newsweek construed negatively against Olivet (despite the congresspeople characterizing these as neutral statements) in articles authored by Rouhandeh.

7. Rouhandeh co-authored many of his attack pieces with Newsweek editor Naveed Jamali. While Rouhandeh was promoted after authoring hit pieces against Olivet, his co-author, Jamali, conversely stated on social media that he feared he would lose his job if he did not attack Olivet. Although Jamali since deleted this post because of its obvious negative implications about his unethical motivation to attack Olivet, the university has retained a recording of Jamali's confession. Jamali reports to Newsweek's Global Editor Emeritus and Advisor Nancy Cooper, who in turn reports to Chief Content and

---

[2]

https://www.techtimes.com/articles/277527/20220703/newsweek-ceo-dev-pragad-faces-lawsuit-for-fraud-and-betrayal.htm

Strategy Officer Dayan Candappa, who sits on the executive team of Newsweek along with Newsweek Publisher, Pragad. Pragad personally solicited ex-Olivet students on social media for information related to their experiences at Olivet to help further the covert inner circle's objectives, despite editor Cooper's claim that the Newsweek newsroom is "independent" from influences outside the newsroom. Olivet has obtained copies of Pragad's personal communications in which he attempted to solicit information from former students that he could use to attack Olivet.

8. Pragad is a former Olivet member. In or around April 2022, Pragad publicly announced his disassociation from Olivet. At the time, Olivet members privately held ownership interests in Newsweek, where Pragad sat as CEO. Pragad was dissatisfied with Olivet after it refused to pressure its members to hand Newsweek ownership over to Pragad for free. As Publisher, Pragad threatened via text messages to "go to [the] media about Olivet" to attack it with claims of "human trafficking" if Olivet did not reach a "special arrangement" by forcing its members to give Pragad full control of Newsweek. These text messages were sent only days before Rouhandeh, Cooper, Candappa, Jamali, and others began Newsweek's systematic attack

against Olivet, publishing now 20 articles. Meanwhile, Cooper ran a smokescreen campaign to ethics-wash Newsweek's illegal motives.[3]

9. Rouhandeh, Cooper, Candappa, and Jamali have followed through on Pragad's various threats, authoring for publication numerous false and defamatory statements about Olivet. Among other articles, on June 29, 2023, Newsweek published an article (the "Defamatory Article"), orchestrated, written, edited, and published by Pragad, Rouhandeh, Cooper, Candappa, and Jamali, falsely associating Olivet with serious criminal activity such as "money laundering, visa fraud and labor trafficking."[4]

---

[3] Rouhandeh previously repudiated having any knowledge of Pragad's text messages. This is curious, especially given the public justification Rouhandeh's editor, Cooper, gave for Newsweek's ongoing Olivet coverage. In a public, July, 2022 letter titled, "Covering Newsweek's Owners," Newsweek Global Editor in Chief Nancy Cooper wrote, "'[w]e've been accused of being a partisan actor in [a Newsweek] shareholder dispute because we've committed resources to covering a little-known Christian sect [i.e., Olivet] whose latest troubles have drawn scant attention from other media outlets. If these controversies had no connection to Newsweek's owners, we'd likely not cover them either. But it's crucial for us to report on our proprietors…. [W]e have rigorously covered developments related to our owners, and we will continue to do so. *This is a standard ethical practice in U.S. newsrooms. To ignore the story would be* passive if not *complicit.*" Nancy Cooper, *Covering Olivet's Owners*, NEWSWEEK (July 5, 2022), https://www.newsweek.com/covering-newsweeks-owners. At best, the failure of Cooper and Candappa to investigate the authenticity of their Publisher's text messages represents a brazen and reckless disregard of their ethical and professional duties as editors and journalists to investigate their subject matter. At worst, it is a defamation by omission, a damning demonstration of their willful and intentional turning of a blind eye toward the Newsweek Publisher's wrongdoing. Notably, it is Pragad that claims, dubiously, to be the owner of Newsweek—a claim deserving heightened scrutiny in Newsweek's coverage, according to editor Cooper. Yet ironically, Rouhandeh and Cooper for years ignored the easily verifiable text messages of "owner" Pragad in the name of bashing Pragad's enemy, Olivet—while justifying their attack on Olivet under the smokescreen of Cooper's letter.

[4] Alex J. Rouhandeh and Naveed Jamali, *Newsweek Shareholders End Legal Dispute, Co-owner Davis Leaves Olivet Sect*, Newsweek (June 29, 2023, 5:06 PM),

10. Pragad, Rouhandeh, Cooper, Candappa, and Jamali knew that this and numerous other statements in the June 2023 Defamatory Article they orchestrated, wrote, edited, and published were false. The deliberate false and misleading reporting by Pragad, Rouhandeh, Cooper, Candappa, and Jamali about Olivet University had its intended effect, causing serious and ongoing damage to Olivet's reputation. Olivet brings this lawsuit to seek redress for its injuries and to stop Pragad, Rouhandeh, Cooper, Candappa, and Jamali from further damaging its reputation.

## PARTIES

11. Plaintiff Olivet is a religious nonprofit corporation organized and existing under the laws of the State of California with its principal place of business in Anza, California. Olivet Theological College & Seminary was founded in 2000 by evangelical, Korean American pastor Dr. David Jang. The seminary expanded into a full university in 2004, and thus Olivet University was born. Olivet is registered to do business in Florida.

12. Defendant Rouhandeh, an individual, is a congressional correspondent for Newsweek. Rouhandeh is a resident of Sarasota County and is domiciled in the Middle District of Florida. Rouhandeh is the author and co-author of numerous defamatory articles that Newsweek published.

---

https://www.newsweek.com/newsweek-shareholders-end-legal-dispute-co-owner-davis-leaves-olivet-sect-1810029.

13. Defendant Pragad, an individual, is the Publisher of Newsweek. Pragad is a resident of Westchester County, New York, and is domiciled in the Southern District of New York. Pragad is the initiator, orchestrator, and publisher of numerous defamatory articles that Newsweek published about Olivet. Pragad has visited Florida on multiple occasions to do business.

14. Defendant Cooper, an individual, is the Global Editor in Chief Emeritus and Advisor of Newsweek. Cooper is a resident of New York County, New York, and is domiciled in the Southern District of New York. Cooper is the writer, editor, and co-publisher of numerous defamatory articles that Newsweek published about Olivet.

15. Defendant Candappa, an individual, is the Chief Content and Strategy Officer of Newsweek. Cooper is a resident of Morris County, New Jersey, and is domiciled in the District of New Jersey. Candappa is the writer, editor, and co-publisher of numerous defamatory articles that Newsweek published about Olivet.

16. Defendant Jamali, an individual, is the Newsweek Editor at Large. Upon information and belief, Jamali is a resident and domiciliary of New York, New York. Jamali is the author of numerous defamatory articles that Newsweek published about Olivet.

## JURISDICTION AND VENUE

17. This Court has subject matter jurisdiction over this action pursuant to 28 U.S.C. § 1332 because the parties are citizens of different states and the amount in controversy exceeds $75,000.00, exclusive of interest and costs.

18. There is complete diversity among the parties because Olivet is a corporation organized under the laws of the State of California with its principal place of business in Anza, California, and Rouhandeh, Pragad, Cooper, Candappa, and Jamali are citizens and/or domiciliaries of Florida, New York, or New Jersey, respectively.

19. The amount in controversy exceeds $75,000.00 (exclusive of interest and costs) because, as alleged herein, the false and defamatory statements written, edited, and published by Rouhandeh, Pragad, Cooper, Candappa, and Jamali have caused Olivet significant reputational, financial, and professional harm worth more than a million dollars.

20. This Court has general personal jurisdiction over Rouhandeh because he is domiciled in the Middle District of Florida.

21. This Court has specific personal jurisdiction over Pragad, Cooper, Candappa, and Jamali because the effects of their defamatory statements have been felt in Florida and have targeted Florida institutions, namely Olivet University in Florida, and Olivet's accreditor in Florida, the Association for Biblical Higher Education, which Florida has an interest in protecting.

This Court has personal jurisdiction pursuant to FRCP 4(k)(1)(A) and Florida's long arm statute, Section 48.193, Florida Statutes, because the Defendants operated, conducted, engaged in, carried on their business venture in Florida while transacting business in Florida; committed a tortious act, defamation, the effects of which have been felt in Florida; and engaged in substantial and not isolated activity within Florida. Pragad, Coooper, Candappa, and Jamali systematically contracted with consumers, readers, and advertisers in the state to supply goods and services in the state when it published magazine articles that reached thousands of consumers in Florida, defaming Plaintiff. The media articles containing the defamatory content caused injury to the Plaintiff in Florida state. Additionally, the Defendants' systematic, nationwide promotion and sale of the defamatory articles to consumers across the country, including the promotion and sales within Florida state to Florida consumers, caused injury to the plaintiff in Florida state causing detrimental harm in the state. This harm occurred while the defendants took advantage of the protection of Florida state laws, as well as the dealmaking, advertising, and connections to the globally-recognized Florida media industry, all while deriving substantial revenue from the sales of the defamatory articles and other business activity in Florida state, throughout the several states, and internationally. Specifically within Florida state, the business activities of the defendants, and harms caused to Plaintiffs,

took place within the Middle District of Florida, as well as within other locales contained within the jurisdictional territory of the district courts of Florida.

22. This court also has specific personal jurisdiction under Supreme Court precedent set by the Court in *Intl. Shoe Co. v. Washington*, 328 U.S. 310 (1945) because the Defendants generated "minimum contacts" with Florida when they created and published defamatory content designed to generate readership, advertising revenue, and magazine sales in Florida and nationwide. These sufficient "minimum contacts" satisfied the "Due Process Clause" of the Constitution because the traditional notions of fair play and substantial justice are not offended because the injury occurred in Florida state where the defamation was felt by the Plaintiff.

23. Venue is proper in this District under 28 U.S.C. § 1391(b)(2)-(3) because the defamation substantially occurred in this District, or, alternatively, under (b)(3) because the Defendants are subject to specific personal jurisdiction in this Court.

## FACTUAL ALLEGATIONS

24. Beginning on June 27, 2022, Pragad, Cooper, and Candappa orchestrated, wrote, edited, and published a series of 20 articles full of numerous false and defamatory statements detailing supposed criminal activity, associations, and investigations centering on Olivet. There are so many false and defamatory

statements concerning Olivet throughout these articles that they are too numerous to count.

25. On Tuesday, June 24, 2025, Olivet gave pre-suit notice to Rouhandeh, Pragad, Cooper, Candappa, and Jamali, respectively, pursuant to Florida Statutes Section 770.01. Rouhandeh, Pragad, Cooper, Candappa, and Jamali subsequently failed to retract the numerous defamatory statements in the Defamatory Article.[5]

---

[5] Olivet respectfully requests the Court to note that Olivet has provided ample opportunity for retraction to Newsweek for its numerous defamatory statements. Olivet repeatedly warned Pragad, Cooper, and Candappa for the last two years to cease and desist its systematic attack campaign. Olivet sent at least three legal cease-and-desist letters; 21 emails warning the magazine it was publishing defamatory content; and made at least two official press releases rebutting Newsweek's stories. These warnings were drastic in nature. In a March 27, 2023 email responding to a Newsweek press inquiry for comment on a pending story, Olivet warned Rouhandeh the following:

> Your company unsuccessfully sued Olivet University, all the while weaponizing its newsroom to pursue stories full of misrepresentations or outright lies to discredit OU in the hope of helping your CEO in his internal shareholder dispute. The lawsuit was dismissed – something you failed to report on – yet you continue to incite and intimidate state agencies against OU…. [Y]ou will be sued very soon in a court of law.

An earlier email, dated July 13, 2022, warned Newsweek as follows:

> Newsweek's behavior is defamatory and a clear violation of the journalistic code of ethics. Newsweek CEO Dev Pragad has several conflicts of interest with Olivet University that have never been disclosed to readers and that are driving his behavior to have his editorial staff attack and defame our institution. The unfortunate reality is that Pragad and his team of attack journalists are trying to rally the public against our dedicated, Christian institution because he is in active litigation in an effort to wrest complete ownership of Newsweek from the husband of our former president. Additionally, Pragad is a former dean at Olivet University. In light of these facts, we have warned Newsweek of defamation litigation.

Yet another, from July 8, 2022, stated:

> [I]t is unfortunate that Newsweek CEO Dev Pragad is violating the longstanding ideals of the fourth estate to empower his legal team, and Newsweek's reporting and editing staff to unfairly target Olivet University and other parties in a blatant smear campaign driven by his personal greed and lack of facts. We plan to aggressively fight Mr. Pragad's allegations in a court of law rather than the courtroom of opinion.

And another, sent November 28, 2022, declared:

> In regard to the coverage by Newsweek, we believe that you ought to make Newsweek readers aware by now that Newsweek CEO Dev Pragad has a serious conflict of interest with Olivet University and its administration. Pragad is facing a lawsuit related to the rightful ownership of Newsweek filed by individuals with former ties to Olivet University. To gain an unfair advantage in that dispute, Newsweek first reported on Olivet University earlier this year, Pragad has also expressly threatened, on several occasions, that he shall use the media to attack and damage the University. And Newsweek's systematic and continuous reporting since then, including by presenting misleading or outright false information to the readers about Olivet University, suggests that Newsweek and [Jamali] are complicit and colluding with Pragad…. Regarding Olivet University and its programs, we shall continue to defend our reputation with nothing but the truth, both in the court of law and elsewhere, and with the knowledge that the heart of Olivet University continues to be for the benefit of our precious students. We sincerely thank God for the protection and blessings He has poured on Olivet University, and for the numerous pathways the Lord has provided for our students across all the campuses in different states to receive a quality Biblical higher education.

In its repeated cease-and-desist letters to Newsweek for defamation and extortion, Olivet expressly warned Newsweek of pending legal action. In a letter dated November 29, 2022, Olivet warned Newsweek counsel that "[i]t has come to Olivet's attention that Mr. Jamali has conspired with Dev Pragad to extort Olivet and to interfere with Olivet's contracts and third parties. Olivet hereby demands that Mr. Jamali cease his misconduct and satisfy the demands set forth herein." Olivet's demands included a full retraction of Jamali's articles and the publication of a "public apology to Olivet describing his part in the extortionate actions." In its cease-and-desist letters, Olivet repeatedly warned Newsweek that its articles contained false assertions of fact, which constitute defamation *per se*. The letters also included express disclaimers that Olivet's legal rights were not limited to the statements addressed in the letters. A cease-and-desist later sent from Olivet to Newsweek on July 12, 2022 provides a clear example of this type of disclaimer:

> This letter does not constitute a complete or exhaustive statement of all of Olivet's rights, claims, contentions, or legal theories regarding this matter. Nothing stated herein is intended as, nor should it be deemed to

26. Olivet will consider filing a motion to consolidate this action into a single case with the Rouhandeh defamation case, also pending in the Florida Middle District, due to the common nucleus of operative facts at the center of the controversy.

27. The articles orchestrated, written, edited, and published by Rouhandeh, Pragad, Cooper, Candappa, and Jamali repeatedly, falsely tied Olivet University to non-existent or non-applicable money laundering and criminal probes. They repeatedly, falsely tied Olivet to other unsubstantiated or unrelated criminal and civil activity such as racketeering and dealing in counterfeit goods. They falsely state that Olivet is under review in multiple states.

28. The Defamatory Article was published by Pragad, Cooper, and Candappa with malice after Pragad repeatedly threatened Olivet members in his text messages. From January to March 2022, weeks before the attack campaign was launched by Newsweek against Olivet, Pragad stated the following: that he would launch a "nuclear bomb" on Olivet; that he would "detonate a

---

constitute, a waiver or relinquishment of any of Olivet's rights or remedies, whether legal or equitable, all of which are hereby expressly reserved.

Newsweek's articles about Olivet University spawned copycat articles about the school in other publications, to which Olivet sent numerous additional cease-and-desist letters for defamation. A dozen defamatory articles across multiple other publications were legally compelled to be retracted in full due to the falsity of the statements published. Other content was removed from the internet due to hate speech violations. But Newsweek brazenly stands by its lies.

nuclear bomb and kill" Olivet; that he would "prepare a news team to write about Olivet"; that he would mow down Olivet like "puppies before a machine gun"; that he would trigger a "congressional investigation" into Olivet; and that he would go to the "media" about Olivet and report it was engaged in "human trafficking." These are but a sampling of his call transcripts and text messages, which have been revealed publicly in the media and in lawsuits. Olivet also has copies of these call transcripts and text messages and testimony from the multiple witnesses who received them directly from Pragad.

29. Olivet filed this lawsuit to obtain remedies for its ongoing injury from the false and defamatory statements made by Rouhandeh, Pragad, Cooper, Candappa, and Jamali in the Defamatory Article.

## COUNT I
## DEFAMATION *PER SE*

30. Olivet incorporates by reference paragraphs 1 through 29 and re-alleges them as if set forth fully herein.

31. Rouhandeh, Pragad, Cooper, Candappa, and Jamali orchestrated, wrote, edited, and published 20 articles, including the Defamatory Article, that were subsequently published on Newsweek's website and these articles repeatedly made false and defamatory statements that Olivet pled guilty to money laundering—it did not; that Olivet is currently under investigation for human

or labor trafficking—it is not; that associate Olivet with drug trafficking—it has never been accused of this by any law enforcement agency; and that associate Olivet with numerous other untrue accusations that Olivet is under criminal or any other investigation, when in fact it is not.

32. Specifically, the Defamatory Article makes numerous defamatory statements, as follows:

33. The headline of the Defamatory Article is defamatory.  The headline of the article is, "Newsweek Shareholders End Legal Dispute, Co-owner Davis Leaves Olivet Sect."  The headline inaccurately states that the "shareholders" ended the legal dispute, but in fact, the ownership of Newsweek was still being disputed, and is still disputed. But Newsweek did not report on this dispute, despite Cooper's public letter stating that Newsweek would vigilantly cover news about its "owners."  Instead, the Defamatory Article only covered news focused on attacking Olivet.  For this reason, the headline is false and misleading.

34. The headline also falsely and baselessly portrays Olivet as a "sect," despite the press release the article references not mentioning the word "sect," nor Newsweek providing any basis whatsoever for this defamatory portrayal. This false portrayal harms Olivet by ostracizing the university from its peers and preventing it from doing business among evangelicals, whether those

evangelicals are students, faculty, staff, or partner organizations. This is defamation per se.

35. For the same and similar reasons, the statement that Olivet is a "sect" that had "been embroiled in the [Newsweek ownership] litigation" is false and defamatory. Olivet is not a sect, and no basis was given for this utterly false and repugnant claim. Neither was Olivet "embroiled" in Newsweek's ownership litigation. Rather, Newsweek sued Olivet, and then repeatedly failed to report that it was in fact Newsweek that initiated government investigations into Olivet, sued Olivet, and then falsely reported on Olivet, all while hiding the misdeeds of Newsweek's management. These statements are defamatory towards Olivet.

36. The statement "[d]isciples of controversial sect leader David Jang had sought to bring the publication under their control through a flurry of legal actions that the company countered with its own suits against Jang, Olivet and other groups associated with the Korean-American pastor" is false and defamatory. In the context of Olivet's evangelical Christian ministry, it is defamatory to baselessly call it a sect. In the context of calling Olivet a "sect" it is reckless and defamatory to refer to David Jang as a "leader" of the university, and to use the term "disciples" to refer to Olivet's staff. This is defamatory per se because it harms Olivet's relationship with other evangelicals, which is the core foundation of its ministry. It is also defamatory to refer to Dr. David

Jang, Olivet's retired founder, as "controversial" and to associate him with criminal activity, for which he has never been accused. This misappropriation and malicious, harmful, and reckless association of his name, image, and likeness also represents defamation per se towards Olivet University, which he founded.

37. The statement that Newsweek refused to "respond to a request for comment on the details" of its settlement represents defamation by omission. The hypocritical hiding of the truth by Newsweek harmed Olivet because this active fraud by Newsweek made it impossible for Olivet to set the story straight in the media, even though Olivet repeatedly attempted to lay out the facts about Newsweek's scheme, and its motives for writing negative articles about Olivet, in public relations statements. This publicly damaged Olivet's reputation in front of its evangelical constituents, further ostracizing it from its peers, making it nearly impossible to do business in its field.

38. The statement that "IBT Media" is "one of the Jang-affiliated companies involved in the litigation" that "said it intended to fight on in court" is false and defamatory. In the context of calling Dr. Jang a "sect" leader, this represents misappropriation of Dr. Jang's NIL rights, baselessly associates Jang with IBT, despite the fact that he is a retired evangelical professor that is not associated with IBT.

39. The statement that Pragad "said at the time that he wanted to protect the company and its newsroom from followers of Jang" is defamatory. It is actually the university that needs to be protected from Pragad and his malicious and reckless media attacks that followed his explicit threat to launch a media "nuclear bomb" on Olivet. It also contradicts Pragad's sworn declaration in another case where he states that he had no interaction with the Newsweek newsroom, whereas here, he stated that he wanted to "protect" his newsroom from Olivet and Dr. Jang. Creating the false impression that there is reason to need protection from Olivet University or its founder, Dr. Jang, is defamatory.

40. The statement "followers of Jang," in the context of calling Dr. Jang a "sect" leader, is defamatory. The statement that these individuals were "now under criminal investigation by the Department of Homeland Security" is false, defamatory, and Newsweek knew or should have known this statement was false and defamatory. This is therefore defamation per se.

41. The statement that "Jang's disciples have repeatedly tried and failed to shut down the Newsweek newsroom's reporting of Olivet's legal troubles, and the disputes have threatened to hobble the publication's business as long as either of its co-owners was connected to Olivet" is false and defamatory. First, it is an invasion of privacy and misappropriation of the name, image, and likeness of Olivet's founder. Second, to associate Olivet with "disciples" in a "sect" is

18

defamatory, considering Olivet University is an evangelical, Christian institution. This is also a baseless accusation, maliciously and recklessly grounded in zero facts or reporting. Third, the entire statement is baseless. It is false and defamatory that Olivet ever "tried and failed to shut down the Newsweek newsroom's reporting of Olivet's legal troubles" and that "the disputes… threatened to hobble the publication's business as long as either of its co-owners was connected to Olivet." This groundless statement gaslighting the public was based on zero factual reporting. Newsweek maliciously and recklessly does not even attempt to provide a basis in fact or reality to justify this statement. The statements in this article also represent defamation by implication by casting Olivet in a defamatory light, as if Olivet has taken any out-of-proportion or aggressive or violent action towards Newsweek, but such action never occurred. Similarly, it is knowingly false and defamatory to publish that any individual's connection to Olivet could somehow "hobble" Newsweek.

42. The statement that "Johnathan Davis did not answer questions" is hypocritical and also represents defamation by omission. Newsweek, despite being a media company that should be transparent towards the public, has somehow managed to fail reaching its "owners" for any statement for multiple years, despite their own editor saying it was her duty to vigilantly cover Newsweek's owners. Newsweek justified its coverage of Olivet in 20+

articles by stating that it needed to cover its owners.  But instead, Newsweek failed to cover the past and current ownership disputes of Newsweek, including the related controversial statements of Pragad and Davis about this matter.  The conclusion of this logic is that even Newsweek's own newsroom implicitly acknowledges that investors beyond Pragad and Davis are the true owners of Newsweek.  Furthermore, by ethics washing the despicable actions and lies of Pragad and Davis, Newsweek is in fact defaming Olivet by omission, and the Newsweek newsroom is complicit in this fraudulent activity.  Ironically, Newsweek does this while acknowledging that Newsweek itself was built by "IBT Media… and Etienne Uzac," who "acquired Newsweek in 2013 after spells of ownership under the late electronics entrepreneur Sydney Harman and media mogul Barry Diller, and set about rebuilding its digital and print businesses," not by Pragad.

43. Linking to Newsweek's "Olivet University" topic page is defamatory because it incorporates by republication a link that redirects Newsweek readers to all kinds of false, baseless, and crazy criminal accusations against Olivet, defaming Olivet.

44. The statement that "the publication was dogged by questions over its links to the Olivet sect, not least after its offices were raided in 2018 by agents of the Manhattan District Attorney investigating a money-laundering scheme" is false and defamatory.  It is false that Olivet is a "sect."  There is also no

20

explanation of how an Olivet question would "dog" Newsweek—other than, of course, the fact that Newsweek attacked Olivet in a series of over 20 systematic, orchestrated hit pieces.

45. The statement that "people and institutions associated with Jang" pleaded "guilty in the Manhattan DA's probe" is false and defamatory. Jang, Olivet University's founder, was never accused of any wrongdoing in any DA probe, and has never been accused or investigated for any criminal activity. This false association defames the university and harms its reputation. Furthermore, the context here in the article is that Newsweek falsely attempts to associate Olivet with the "money laundering" from the previous sentence. Olivet University never pleaded guilty to money laundering, as falsely reported by Newsweek before it was forced to retract this false statement after getting sued.

46. The statement that a business deal "had been contrived by Jang's disciples to avoid scrutiny by prosecutors and the media" is false and defamatory because it was actually Pragad himself that contrived such a deal, as has been revealed in a federal lawsuit in the United States District Court in the Southern District of New York.

47. The statement in the article that "IBT intends to continue to vigorously pursue its claims to restore its rightful ownership to the Newsweek assets, including pursuing its pending appeal" contradicts the article's headline that

Newsweek ownership disputes have come to an "end," and shows that the article itself is based on a false premise, falsely and baselessly associating Olivet with wrongdoing, when it is actually Newsweek and its covert team of Olivet attackers that are the wrongdoers.

48. The following statement is false and defamatory: "Meanwhile, Olivet's legal woes have been deepening. Homeland Security Investigations raided Olivet University's main campus in the California town of Anza in April 2021, looking for evidence of money laundering, visa fraud and labor trafficking. It was raided again in November 2022, this time by education investigators in California. California's attorney general subsequently filed a complaint asking for Olivet to be shut down." Olivet's legal woes were not "deepening" due to an April 2021 search that was now being reported by Newsweek over two years later in June of 2023. Nor were they "deepening" due to a visit from California education department officials in November 2022, eight months prior to this article's publication. Olivet was not "raided." Olivet welcomed these state agency officials and toured them around the campus. Olivet also fulfilled their document requests and answered any questions they had. Olivet did not commit "money laundering, visa fraud and labor trafficking." California's attorney general never asked for Olivet to be "shut down." These statements are each false instances of defamation per se.

49. The statement that "Olivet University had already been shut down in New York and has been closed or put under review in half a dozen states across America" is false and defamatory. Olivet has not been "shut down" by the state of New York or any state, and therefore this statement is misleading and maliciously and recklessly harms Olivet's reputation. Furthermore, Newsweek directly instigated regulatory investigations into Olivet, as revealed in a tortious interference lawsuit against Naveed Jamali and other Defendants here, which Olivet filed in the Southern District of New York on June 29, 2025. Yet Newsweek did not report that its own team instigated these investigations into Olivet by gaslighting public officials around the country, leveraging the significant Newsweek brand power to do so.

50. The statement that Olivet's "sole accreditor, the Association for Biblical Higher Education, has put the university's status on review" specifically targets a Florida institution that regulates Olivet University nationally. The article was designed to attack Olivet's Florida and national accreditation. Repeatedly defaming Olivet and then specifically designing the article to attack Olivet's accreditation status in Florida and nationwide amplifies the defamatory effect of the article. This harms Olivet in its trade or business and is therefore another instance of defamation per se. It also makes it clear that the Defendants committed this tort of defamation within the reach of Florida's long-arm statute.

51. The statements made by Rouhandeh, Pragad, Cooper, Candappa, and Jamali identified—and were "of or concerning"—Olivet, repeatedly referring to Olivet explicitly by name or implicitly by association with various other entities and individuals.

52. The statements made by Rouhandeh, Pragad, Cooper, Candappa, and Jamali contain falsehoods about Olivet, whether on their face, and/or by virtue of clear implication that Defendant affirmatively intended, or by malicious, intentional, or reckless omission.

53. The false statements by Rouhandeh, Pragad, Cooper, Candappa, and Jamali regarding Olivet were defamatory *per se* because they falsely associated Olivet directly and indirectly with criminal activity.

54. The false statements by Rouhandeh, Pragad, Cooper, Candappa, and Jamali regarding Olivet were defamatory *per se* because they "[tend] to injure one in… trade or profession" as they associate Olivet, an evangelical Christian institution, with egregious unethical conduct and beliefs that are irreconcilable and incompatible with the proper exercise of its mission to "[equip] [Biblical scholars and leaders] with the practical skills to preach the Gospel effectively… [and prime] them to revolutionize the world through Christian mission."[6]  To the extent any of the statements by Rouhandeh,

---

[6] *Mission*, OLIVET UNIVERSITY,
https://www.olivetuniversity.edu/aboutolivet/mission.html (last visited Feb. 21, 2025).

Pragad, Cooper, Candappa, and Jamali were not defamatory *per se*, Olivet alleges they were defamatory under the standard elements of a Florida defamation claim.[7]

55. The false and defamatory statements by Rouhandeh, Pragad, Cooper, Candappa, and Jamali were published throughout the State of Florida and around the world on the Internet, and were widely circulated by Newsweek to disseminate the statements to its broad audience, including on its homepage as the global top news story; by email blast to its subscribers; and throughout its website sections, pages, and topic pages.

56. Rouhandeh, Pragad, Cooper, Candappa, and Jamali made the false and defamatory statements knowing that they were false or with reckless disregard for their truth or falsity because of publicly available information that a reasonable writer, editor, or publisher would be expected to find.

57. Rouhandeh, Pragad, Cooper, Candappa, and Jamali made the false statements with ill will and spite, and with wanton, reckless, or willful disregard for its injurious effect on Olivet and Olivet's rights after the Newsweek Publisher Pragad declared he would drop on Olivet a "nuclear bomb."

---

[7] To succeed on a defamation claim, a plaintiff must establish (1) publication; (2) falsity; (3) knowledge or reckless disregard as to the falsity (4) actual damages; and (5) that the statement is defamatory.

58. The false and defamatory statements by Rouhandeh, Pragad, Cooper, Candappa, and Jamali caused Olivet to suffer reputational, financial, and professional harm.

59. To quantify the harm that Olivet suffered and continues to suffer from the Defamatory Article and Newsweek's ongoing attack campaign, it is helpful to look at the influence of a single ad campaign on Newsweek. Newsweek advertising packages involving over a dozen sponsored content articles command advertising rates of over $1,000,000. Olivet has been damaged by Newsweek's influence in an amount far greater than an advertising campaign would cost because not only has Newsweek published 20 articles by Rouhandeh, Pragad, Cooper, Candappa, and Jamali in its campaign against Olivet, but also it repeatedly boosted its Olivet articles to its top global news positions via website and email blast. Therefore, Olivet seeks damages in an amount no less than $1,000,000.

60. Olivet seeks punitive damages for the malicious Defamatory Article in an amount that would discourage Rouhandeh, Pragad, Cooper, Candappa, and Jamali from engaging in such behavior in the future. Olivet seeks punitive damages in an amount no less than $9,000,000.

61. Olivet demands trial by jury.

**PRAYER FOR RELIEF**

WHEREFORE, Olivet prays this Court enter orders as follows:

1. Finding that Rouhandeh, Pragad, Cooper, Candappa, and Jamali are liable for defaming Olivet.

2. Awarding permanent injunctive relief that Rouhandeh, Pragad, Cooper, Candappa, and Jamali shall refrain from repeating or in any way furthering the publication of the defamatory statements.

3. Awarding Olivet damages in an amount to be determined at trial in an amount no less than $10,000,000.

4. Awarding Olivet pre- and post-judgment interest, costs, and such other and further relief as this Court may deem just and proper.

## JURY DEMAND

Olivet hereby demands a trial by jury on all issues so triable pursuant to Rule 38 of the Federal Rules of Civil Procedure.

Dated: June 29, 2025                    Respectfully submitted,


By: */s/ Yen-Yi Anderson*
     Yen-Yi Anderson
     New York Bar No. 5096268
     *Pro Hac Vice* Admission to Florida
     Middle District as Olivet Counsel
     Anderson and Associates
     61 Broadway, Suite 2809
     New York, NY 10006
     Tel: (646) 201-9117
     Email: y.anderson@aalawpc.com

     Attorneys for Plaintiff
     Olivet University